IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTONE LA. KNOX,                              )
                                              )
            Petitioner,                       )
                                              )
v.                                            )          Case No. CIV-05-390-W
                                              )
MIKE MULLIN,                                  )
                                              )
            Respondent.                       )

## REPORT AND RECOMMENDATION

The Petitioner, Mr. Antone Knox, is a state inmate who seeks a writ of habeas corpus. The habeas petition should be denied.

### BACKGROUND

On September 13, 2001, prison officials escorted Mr. Knox to "lock up," telling him to change pants and gather his personal property. *See* Trial Transcript at pp. 126-28, 131, 133, *State of Oklahoma v. Knox*, Case No. CF-2001-45 (Greer Co. Dist. Ct. May 16, 2002) ("Trial Transcript"). According to officials, Mr. Knox refused and jabbed at them with a sharp instrument. *See id.* at 134.

After a jury trial, Mr. Knox was convicted in criminal proceedings on charges involving possession of contraband within a state penal institution and assault upon an employee of the state department of corrections. *See* Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody at pp. 1-2 (Apr. 4, 2005) ("Petition").

He appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed. Summary Opinion at pp. 1-2, *Knox v. State of Oklahoma*, Case No. F-2002-825 (Okla. Crim. App. Sept. 17, 2003). After an unsuccessful application for post-conviction relief,[1] Mr. Knox again appealed and the OCCA affirmed.[2]

The present action followed.

STANDARD FOR HABEAS RELIEF

This Court has a "secondary and limited" role in the review of state court rulings through a petition for habeas relief. *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998) (citations omitted).

For example, when factual allegations are involved, a federal court can grant habeas relief if the state court had made "an unreasonable determination of the facts in light of the evidence presented." Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(2) (2000).

Habeas relief is otherwise unavailable unless the state court had "reached a conclusion opposite to that reached by the Supreme Court on a question of law, decided the case differently than the Supreme Court has decided a case with a materially indistinguishable set

---

[1]     *See* Order Denying Application for Post-Conviction Relief, *Knox v. State of Oklahoma*, Case No. CF-2001-45 (Greer Co. Dist. Ct. Jan. 26, 2005).

[2]     Order Affirming Denial of Post-Conviction Relief, *Knox v. State of Oklahoma*, Case No. MA-2005-139 (Okla. Crim. App. Mar. 9, 2005).

of facts, or unreasonably applied the governing legal principle to the facts of the petitioner's case." *Sallahdin v. Gibson*, 275 F.3d 1211, 1221 (10th Cir. 2002).

## INEFFECTIVE ASSISTANCE OF COUNSEL - GROUND ONE

In his first ground for relief, the Petitioner claims that his legal representation had been ineffective at the preliminary hearing, trial, and direct appeal. Petition at p. 5. These claims should be denied on the merits.[3]

I.     Standard of Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if the representation falls below an objective standard of reasonableness. *See id.* at 687-88. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

II.    Alleged Ineffective Assistance at the Preliminary Hearing

At the preliminary hearing, Mr. Knox was represented by Ms. Kelley Eisenberg. Transcript of Preliminary Hearing at p. 1, *State of Oklahoma v. Knox*, Case No. CF-2001-45

---

[3]     Mr. Mullin asserts a defense of procedural default on the Petitioner's claims involving ineffective assistance at the preliminary hearing and trial. Response to Petition for Writ of Habeas Corpus at pp. 2-21 (May 27, 2005) ("Mr. Mullin's Response"). But the Court need not address the issue of procedural default because the claims can "be more easily and succinctly" denied on the merits. *See Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1294 (2005); *see also Fields v. Gibson*, 277 F.3d 1203, 1217-18 (10th Cir. 2002) ("We need not review the district court's conclusion that this claim is procedurally barred because we can easily find it fails on the merits." (citation omitted)).

3

(Greer Co. Dist. Ct. Dec. 13, 2001) ("Preliminary Hearing Transcript").  According to Mr.

Knox, the attorney had used a racial slur and had failed to: (1) investigate, identify, and use

available evidence; and (2) object to inadmissible evidence and prosecutorial misconduct.

Petition at pp. 5, 5a.  The Court should reject the Petitioner's claims.

A.      The Alleged Use of a Racial Slur

According to Mr. Knox, he had been described by his attorney with a racial slur.  *Id.*

at p. 5a.  But the alleged slur occurred after the preliminary hearing, and Mr. Knox obtained

a new attorney shortly thereafter.  *See* Supporting Brief and Affidavit at p. 8, *Knox v. State*

*of Oklahoma*, Case No. MA-2005-139 (Okla. Crim. App. verified Jan. 31, 2005) ("Brief in

Support of Petition-in-Error").  Mr. Knox supplies no reason to believe that the outcome of

the preliminary hearing or trial would have been different without the alleged slur.  Based

on the lack of prejudice, the Court should deny this claim.

B.      Failure to Investigate, Identify, and Use Available Evidence

Mr. Knox does not identify the evidence Ms. Eisenberg should have investigated,

identified, and used.  But the Petitioner appears primarily concerned with counsel's failure

to secure and use a copy of the videotape of the incident.  *See* Petition, *passim*; Brief in

Support of Petition-in-Error, *passim*.  Ms. Eisenberg's representation was adequate, and Mr.

Knox has not demonstrated prejudice.

When the preliminary hearing began, Ms. Eisenberg expressed a belief that a

videotape of the altercation existed and requested a copy.  *See* Preliminary Hearing

4

Transcript at p. 11.  The prosecutor denied any knowledge of a videotape, and a prison official later testified that there were no video cameras in the cells and that his team did not have a video camera during the altercation.  *Id.* at pp. 11, 29.  In light of these representations, the Court should conclude that Ms. Eisenberg did not act unreasonably and that no prejudice took place.

First, a prison official denied the existence of a videotape.  *See supra* p. 5; *see also* Brief in Support of Petition-in-Error at p. 6 (describing a letter from prison officials, denying the capability to record the output from the dayroom camera).  Ms. Eisenberg acted reasonably in accepting this representation, as she could not obtain and review something that did not exist.  *See*, *e.g.*, *Brecheen v. Reynolds*, 41 F.3d 1343, 1366 (10th Cir. 1994) ("[A]n attorney 'is not required to investigate all leads' as long as the decision not to pursue a particular lead, or to pursue a particular lead only so far, is reasonable under the circumstances." (citation omitted)).

Second, the alleged error was not prejudicial, as the Court lacks any reason to believe that the determination of probable cause,[4] guilt, or the appropriate sentence would have been affected by the alleged videotape even if it existed.

The Petitioner claimed in state court that a video camera had overlooked the "G-Unit dayroom."  Brief in Support of Petition-in-Error at p. 6.  But Mr. Knox does not deny that

---

[4]     In Oklahoma, "[t]he purpose of the preliminary hearing is to establish probable cause that a crime was committed and probable cause that the defendant committed the crime."  Okla. Stat. tit. 22 § 258(7) (2001).

there were no cameras in his cell, where he was three-quarters deep between officers and the door. *See* Preliminary Hearing Transcript at pp. 19-20, 29-31; Trial Transcript at pp. 148-49. Thus, the Petitioner is only speculating that the dayroom video camera would have captured the incident inside his cell. Under these circumstances, Mr. Knox cannot demonstrate a reasonable probability that with the videotape, he would have obtained dismissal of the charges, an acquittal, or a lighter sentence.

In light of the absence of deficiency in the representation or prejudice, the Court should deny habeas relief on the claims involving Ms. Eisenberg's failure to secure and use the alleged videotape.

C.    Failure to Object to Inadmissible Evidence

As noted above, Mr. Knox does not identify the evidence that was inadmissible. *See supra* p. 4. But the Court can assume that the Petitioner is upset that Ms. Eisenberg did not object to introduction of the knife into evidence. *See* Petition at p. 6. According to Mr. Knox, the State allowed the prison to keep the knife in custody until the preliminary hearing. *Id.* The Petitioner suggests that the physical evidence was tainted as a result. *Id.* Ms. Eisenberg declined to object to the admission of the knife, but the Court should conclude that the lack of an objection was not prejudicial.

During the preliminary hearing, prison official Bobby Goodson identified the knife as the one that Mr. Knox had pulled from his sweatpants, described the clear plastic tape affixed to the knife as the prison's "contraband or evidence tag," and testified that the knife

6

had been taken away when Mr. Knox threw it down.  Preliminary Hearing Transcript at pp. 24-25.  Mr. Goodson stated that he then kept the knife until it was given to Captain Ric Bolding.  *Id.* at p. 25.

At the preliminary hearing, the prosecutor intended to call witnesses to establish a chain of custody for the knife.  *See id.* at pp. 34-35.  But the judge stated that multiple witnesses were unnecessary, explaining: "When we have an item that is sufficiently unique to be described by the person who has seen that item as the item [he] saw, . . . chain of custody is not a great matter of concern."  *Id.* at p. 35.  This reasoning was not erroneous under Oklahoma law.

In *Dunford v. State of Oklahoma*, 561 P.2d 579 (Okla. Crim. App. 1977), the victim had been allowed to keep a coat in his possession until the preliminary hearing.  *See Dunford v. State of Oklahoma*, 561 P.2d at 581.  When the coat was offered into evidence, the defendant objected on grounds that a proper chain of custody had not been established.  *See id.*  The OCCA held that introduction of the coat was not in error because the item was "unique and therefore easily identifiable."  *Id.* at 582.  The court explained that when an item "is of such a character that only the barest speculation would permit one to conclude [that it] had been altered or exchanged during the time it was outside the custody of the police officer[,] . . . [a] break [in the chain of custody] does not provide a ground for reversal . . . ."  *Id.*

An objection by Ms. Eisenberg, based on chain of custody, would have been futile in light of the judge's ruling.  The judge viewed the knife as unique, obviating the need to

establish a chain of custody.  This ruling was reasonable under *Dunford v. State of Oklahoma*.  If the attorney had objected, as Mr. Knox suggests, the judge would presumably have reached the same conclusion.  The objection would have preserved an appeal point for Mr. Knox, but the OCCA presumably would have upheld the ruling under *Dunford v. State of Oklahoma*.  In these circumstances, the absence of an objection was neither unreasonable nor prejudicial.

      D.    <u>Failure to Object to Prosecutorial Misconduct</u>

Mr. Knox also complains of a failure to object to prosecutorial misconduct at the preliminary hearing.  *See supra* p. 4.  As discussed below, however, the Court should reject the separate claims of prosecutorial misconduct.  *See infra* pp. 9-13.  Thus, Mr. Knox cannot show a reasonable probability that the outcome of his preliminary hearing would have been different if Ms. Eisenberg had objected to the prosecutor's conduct.  *See Neill v. Gibson*, 278 F.3d 1044, 1058-59 (10th Cir. 2001) (holding that counsel could not have been ineffective for failure to object to prosecutorial argument that is determined to be proper).  The absence of prejudice would foreclose habeas relief on the related claim of ineffective assistance.

      E.    <u>Summary</u>

The Court should reject Mr. Knox's claims of ineffective assistance at the preliminary hearing.

III.   Ineffective Assistance at Trial and on Direct Appeal

Mr. Knox blames his trial counsel for the same alleged failures attributed to Ms. Eisenberg.  Petition at pp. 5, 5a; Brief in Support of Petition-in-Error, *passim*.  The Petitioner's appellate counsel allegedly compounded the errors through a failure to claim ineffective assistance on the part of the lawyers involved in the preliminary hearing and the trial.  Petition at pp. 5, 5a.

But as noted above, Mr. Knox did not suffer any prejudice from the alleged failure to pursue discovery of the alleged videotape, contest admission of the knife into evidence, or object to the prosecutor's conduct.  *See supra* pp. 3-8.  As a result, the Court should also deny Mr. Knox's claims involving shortcomings of the attorneys at trial and on appeal.  *See supra* p. 8.

PROSECUTORIAL MISCONDUCT - GROUND TWO

Mr. Knox alleges that the prosecutor had: (1) neglected to secure the knife or lay a foundation for its admission into evidence, (2) refused to produce the videotape, (3) argued facts not in evidence, and (4) improperly excluded African-Americans from the jury.  Petition at p. 5a.  The Court should reject these claims.[5]

---

[5]      The Respondent also claims that the prosecutorial misconduct claims are procedurally barred.  Mr. Mullin's Response at pp. 21-23.  But they are more easily rejected on the merits.  *See supra* p. 3 n.3.

I.      Standard for Prosecutorial Misconduct

In considering a habeas claim based on prosecutorial misconduct, the Court must determine whether a constitutional violation had taken place "which so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994) (citation omitted).  If a prosecutor has acted improperly, "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (citations omitted).

II.     Claims Concerning the Knife

For three reasons, the Court should reject the Petitioner's claims concerning admission of the knife into evidence.

First, the State's failure to take possession of the knife did not affect the admission of the instrument into evidence.  *See supra* pp. 7-8.

Second, a proper foundation was laid for admission of the knife into evidence.  Officer Goodson testified that he had secured the knife and prepared a contraband record.  Trial Transcript at pp. 138-39.  After attachment of an evidence tag, Officer Goodson gave the instrument to Captain Boling.  *Id.* at pp. 139, 140-41.  Captain Boling testified that he had received the tagged knife from Officer Goodson and placed it in the contraband locker.  *Id.* at pp. 196-97.  Finally, a state investigator delivered the knife from the locker to Deputy Warden Martin for transfer to the courtroom for the preliminary hearing.  *Id.* at pp. 216-17. Officers Goodson and Kidd testified that they recognized the knife as the one that Mr. Knox had possessed in his cell.  *Id.* at pp. 138-39, 167-68.

10

Third, the Petitioner does not dispute the presence of a knife in the cell.[6] *See* Brief in Support of Petition-in-Error at p. 4.  Instead, he claims that the item presented at trial was different from the knife he had seen in his cell.  Petition at p. 6; Brief in Support of Petition-in-Error at p. 5.  But the Petitioner was convicted of assaulting a prison official with a knife and possessing a knife in prison.  *See supra* p. 1.  The size and type of the knife were irrelevant to the charges.[7]  Thus, Mr. Knox has not demonstrated the probability of an acquittal or lighter sentence without introduction of the knife into evidence.

For each of the three reasons, the Court should reject the claim of prosecutorial misconduct based on admission of the knife into evidence.

III.     Claims Concerning the Videotape

According to the Petitioner, due process required disclosure of the disputed videotape. *See supra* p. 9.  But Mr. Knox merely speculates about the existence of the videotape and, as a result, what it would reveal if it did exist.  *See supra* pp. 4-6.  Thus, the Petitioner has failed to show unfairness from the prosecutor's alleged withholding of the videotape.  *See*, *e.g.*, *Avincola v. Stinson*, 60 F. Supp. 2d 133, 162 (S.D. N.Y. 1999) (rejecting a claim of

---

[6]     Mr. Knox alleges that Officer Goodson had possessed the knife.  Brief in Support of Petition-in-Error at p. 4.

[7]     *See*, *e.g.*, Okla. Stat. tit. 57 § 21 (2001) (stating that a felony exists when one brings into a penal institution any "gun, knife, bomb or other dangerous instrument"); Okla. Stat. tit. 21 § 650.2(A) (2001) (stating that a felony exists when a prisoner assaults a penal employee).

prosecutorial misconduct based on nondisclosure when existence of the evidence was speculative).

IV.   Arguing Facts Not in Evidence

The Petitioner claims that the prosecutor had argued facts not in evidence. Petition at p. 6. But Mr. Knox supplies no examples and the Court cannot guess about the nature of Mr. Knox's complaint. *See Daniel v. Wyoming Department of Corrections State Penitentiary Warden*, 208 F.3d 225, 2000 WL 216616, Westlaw op. at 1 (10th Cir. Feb. 23, 2000) (unpublished op.) ("The allegation of prosecutorial misconduct lacks specificity, and therefore amounts to a conclusory argument that cannot suffice to demonstrate a violation of Daniel's constitutional right to a fair trial.").

V.   Exclusion of African-American Jurors

Mr. Knox asserts that the prosecutor had used "unconstitutional racial discrimination in order to exclude African[-Americans] from the jury and panel."[8]   Petition at p. 6.

---

[8]      The Petitioner suggests that while excluding African-American panelists, the prosecutor had left: (1) a woman that knew Officer Goodson and was confident that he did not lie, and (2) a man that said he assumed guilt from the existence of the accusation. Response and Reply at p. 3 (June 30, 2005).

Mr. Knox is incorrect. As Mr. Knox suggests, the venire included a female that knew Officer Goodson and stated that she was more likely to believe the officer's testimony based on his character. *See* Trial Transcript at pp. 35-38. Another female panelist also knew many of the witnesses, including Officer Goodson. *See id.* at pp. 104-106. But both venirepersons were excused by the court for cause. *See id.* at pp. 38, 106.

The venire also included several men that stated they could not be fair because they believed that the Petitioner was probably guilty if he was on trial. *Id.* at pp. 13, 14, 18, 19. These men were also excused by the court for cause. *See id.*

However, the Petitioner does not identify the stricken panelists who were African-American, and the record does not reflect the race of any of the venirepersons.  *See* Trial Transcript at pp. 3-108 (*voir dire* proceedings).   The Petitioner's failure to identify the stricken venirepersons or their race prevents meaningful consideration of the claim.[9]

VI.   Summary

The Court should reject the Petitioner's claims concerning the State's alleged:  (1) failure to secure the knife or lay a foundation for its admission into evidence, (2) refusal to produce the videotape, (3) arguments involving facts not in evidence, and (4) exclusion of African-Americans from the jury.  Mr. Knox has failed to demonstrate that the prosecutor's conduct infected the trial with such unfairness that the resulting conviction would constitute a deprivation of due process.  Thus, the Court should deny these claims on the merits.

CONSTITUTIONAL VIOLATIONS IN POST-CONVICTION PROCEEDINGS

Mr. Knox filed an application for post-conviction relief in state court.  *See supra* p. 2. During these proceedings, the Petitioner was denied transcripts at public expense.  *See* Petition at pp. 5b, 7-8.  Ultimately, the state courts rejected Mr. Knox's post-conviction claims.  Order Denying Application for Post-Conviction Relief, *Knox v. State of Oklahoma*, Case No. CF-2001-45 (Greer Co. Dist. Ct. Jan. 26, 2005); Order Affirming Denial of Post-

---

[9]      *See United States v. Bedonie*, 913 F.2d 782, 795 (10th Cir. 1990) (rejecting a *Batson* claim because "[t]here is no evidence in the record to support appellants' assertion that the person removed via the government's peremptory challenge--Jane Bridge--is a member of appellants' racial group"); *United States v. Jones*, 24 Fed. Appx. 968, 976 (10th Cir. Dec. 27, 2001) (unpublished op.) (the petitioner did not establish a *prima facie* claim of discrimination based on the absence of evidence that individuals removed from the jury panel were African-American).

Conviction Relief, *Knox v. State of Oklahoma*, Case No. MA-2005-139 (Okla. Crim. App. Mar. 9, 2005).  Mr. Knox believes that the denial of transcripts and post-conviction relief involved constitutional violations.  Petition at p. 5a.  The Court should reject these theories.

I.      Denial of Transcripts at Public Expense

The United States Supreme Court has held that on direct appeal, an indigent criminal defendant is entitled to a trial transcript.  *Griffin v. Illinois*, 351 U.S. 12 (1956).  However, Mr. Knox had an appeal in state court and does not suggest that his appellate attorney lacked a trial transcript.  *See* Petition at pp. 2, 5b; Brief in Support of Petition-in-Error at pp. 10-11. Instead, the Petitioner complains about the lack of free transcripts during post-conviction proceedings.  But Mr. Knox has no constitutional right to post-conviction review.  *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).  *A fortiori*, the Petitioner lacks a constitutional right to state funded transcripts to pursue post-conviction relief, and the claim is meritless.  *See Martin v. McKune*, 986 F.2d 1428, 1993 WL 53114, Westlaw op. at 5 n.5 (10th Cir. Feb. 24, 1993) (unpublished op.) ("[T]here is no constitutional right to a free transcript in postconviction proceedings.").

II.     Enforcement of the Waiver Rule

Mr. Knox also challenges the state court rule which prevents consideration of claims that had not been raised on direct appeal.  Petition at p. 5a; *see* Okla. Stat. tit. 22 § 1086 (2001).

14

"The federal courts on habeas review cannot strike down as unconstitutional a state post-conviction procedural rule." *Phillips v. Ferguson*, 182 F.3d 769, 772 (10th Cir. 1999); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) ("Steele's claim challenging the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding."). Thus, the Court should reject Mr. Knox's request for federal habeas relief based on the state court's reliance on the waiver rule.

## REQUEST FOR AN EVIDENTIARY HEARING

Mr. Knox requests an evidentiary hearing on the merits of his habeas claims. Response and Reply at p. 3 (June 30, 2005). His request should be denied.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") restricts the availability of evidentiary hearings when a habeas petitioner fails to develop the factual basis of his habeas claim in state court. *See* 28 U.S. C. § 2254(e)(2)(A)(i)-(ii) (2000). But when a petitioner diligently attempts to develop the facts in state court, the AEDPA's standard does not apply. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000); *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998).

In state court, Mr. Knox acted with diligence to develop the underlying facts. *See* Brief in Support of Petition-in-Error at p. 2 (seeking an evidentiary hearing). Thus, to justify an evidentiary hearing under the pre-AEDPA standard, the Petitioner must satisfy two requirements. First, he must make a threshold showing of "allegations which, if proved, would entitle him to [habeas] relief." *Stouffer v. Reynolds*, 168 F.3d 1155, 1168 (10th Cir.

15

1999).  Second, the Petitioner is entitled to an evidentiary hearing "only if there is a factual dispute."  *Fox v. Ward*, 200 F.3d 1286, 1302 (10th Cir. 2000).

The Petitioner is not entitled to an evidentiary hearing on the claims of ineffective assistance of counsel because proof of the allegations would not support habeas relief.  *See Stouffer v. Reynolds*, 168 F.3d 1155, 1168 (10th Cir. 1999) ("[B]efore a hearing is mandated, we recognize Petitioner must also satisfy the second *Strickland* hurdle, whether he has been prejudiced by counsel's alleged ineffective assistance."); *see also supra* pp. 3-9.  On the prosecutorial misconduct claims, the only factual dispute[10] concerned the exclusion of African-Americans from the jury and those claims were not specific.  *See supra* pp. 12-13. Finally, even if the Court believed Mr. Knox's allegations involving the post-conviction proceedings, Mr. Knox would not be entitled to federal habeas relief.  *See supra* pp. 13-15.

For these reasons, the Court should reject Mr. Knox's request for an evidentiary hearing.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends denial of the petition for a writ of habeas corpus.

---

[10]     Arguably, one factual dispute concerns the alleged existence of the videotape.  But the Court need not resolve that question to reject the claim of prosecutorial misconduct.  *See supra* pp. 4-6, 9, 11-12.

The Petitioner can object to this report and recommendation.  To do so, Mr. Knox must file an objection with the Clerk of this Court.  The deadline for objections is October 11, 2005.  *See* W.D. Okla. LCvR 72.1(a).  The failure to timely object would foreclose appellate review of the suggested ruling.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

Entered this 21st day of September, 2005.


Robert E. Bacharach
United States Magistrate Judge